Garrett S. Garfield, WSBA No. 48375
E-mail:  garrett.garfield@hklaw.com
HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300
Fax:  503.241.8014

Hon. Mary Jo Heston
Chapter 11
Hearing Date: April 10, 2024
Hearing Time: 11:00 a.m.
Hearing Location: ZoomGov
Response Deadline: n/a

*Attorneys for Creditor Cerner Middle East Limited*

# UNITED STATES BANKRUPTCY COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>VANDEVCO LIMITED and ORLAND LTD.,<br><br>Debtors. | Case Nos:<br><br>20-42710-MJH (Lead Case)<br><br>20-42711-MJH (Jointly administered under Case No. 20-42710-MJH)<br><br>Chapter 11<br><br>**CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE**<br><br>**(SUBMITTED IN ADVANCE OF APRIL 10, 2024 STATUS CONFERENCE)** |

Creditor Cerner Middle East Limited ("**Cerner**") submits this memorandum in accordance with the Court's direction to the parties in the status conference held March 20, 2024 to submit a single brief setting out their positions on: (1) what sanctions should be entered with respect to the Debtors Vandevco Limited's ("**Vandevco**") and Orland Ltd.'s (together, "**Debtors**") discovery violations resulting in the cancellation of the scheduled April 29, 2024 hearing in this matter; and (2) whether the motion to execute against debt and other property interests held by Belbadi Enterprises, LLC

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1)
DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11
TRUSTEE
CASE NO. 20-42710-MJH – PAGE 1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 1 of 25

("**Belbadi**") (the "**Execution Motion**")[1] should be heard before or after appointment of a Chapter 11 trustee.[2]

## I. Cerner's Position And Requests For Relief.

This matter represents extraordinary circumstances calling for decisive steps. For the reasons outlined in detail below, Cerner respectfully requests that the Court grant the following relief, both with respect to sanctions against the Debtors, and with respect to resolution of Cerner's Execution Motion and appointment of a Chapter 11 Trustee.

### A. Scope of Sanctions.

First, the strongest possible sanctions should be imposed against the Debtors in response to their egregious and prejudicial conduct, which have now been further shown to be part of a pattern of bad faith actions on the part of Debtors and their principal Ziad Elhindi ("**Elhindi**"):

(1) The Court should at the bare minimum enter an award under Rule 37(b)(2)(C), assessed against the Debtors, their management, and their counsel, of all costs and fees (whether current or prospective) incurred as a result of the discovery violation, whether current or prospective, *and in addition*;

(2) The Court should enter a dispositive sanction under Rule 37 and its inherent authority, denying the Debtors' objections to Cerner's Amended Proofs of Claim in this matter, such that Cerner's claim is allowed in full; and

(3) The Court should enter a limited dispositive sanction under Rule 37 and its inherent authority, denying the Debtors' objections to the Execution Motion, such that Cerner is deemed an allowed creditor at a minimum with respect to the amount of approximately $11 million currently scheduled as a debt owed to either Belbadi or to Willamette Enterprises ("**Willamette**"). (*See* ECF No. 1045, 1045-2; *cf.* ECF No. 101.)

---

[1] Cerner filed the Execution Motion in the related adversary proceeding captioned *Cerner Middle E. Ltd. v. Belbadi Enters., LLC, et ano.*, 23-04006-MJH (Bankr. W.D. Wash.) (ECF No. 65.)

[2] For the reasons below, Cerner regards the issues currently before the Court to be dispositive for purposes of the page limits of LBR 9013-1(d)(1). To the extent necessary, Cerner requests leave to file an overlength brief in light of the significance and complexity of the issues.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 2

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 2 of 25

**B.** **Execution Motion and Appointment of Chapter 11 Trustee.**

Second, Cerner submits that appointment of a Chapter 11 Trustee for cause is plainly required in this case, a view shared by the U.S. Trustee. (*See* ECF No. 1349.) However, the timing and nature of that appointment are of key importance in the circumstances of this case, and Cerner seeks to have the opportunity to participate in the selection and appointment of the Trustee under 11 U.S.C. 1104(b). If the Court grants either or both of the dispositive sanctions requested above, Cerner would be deemed to be a majority creditor, and a Chapter 11 Trustee should then be promptly appointed with Cerner's input, and without further delay or expense.

If the Court does not grant either of the requested dispositive sanctions at this time, Cerner requests that the Court address the outstanding issues in the following sequence:

    (1)    The Court should grant the Execution Motion based on the existing record, and to the extent necessary, based on adverse inferences already granted in the Court's Order on Cerner's Motions to Compel (the "**Sanctions Order**") (ECF No. 691), such that Cerner is deemed an allowed creditor at a minimum with respect to the amount of approximately $11 million currently scheduled as a debt owed either to Belbadi or to Willamette;

    (2)    The Court in the alternative should hold an expeditious hearing on the Execution Motion to determine the existence of Belbadi's executable property interests in Washington, and Cerner's status as a deemed-allowed creditor in this matter;[3]

    (3)    The Court in either case should, after resolution of the Execution Motion, appoint an appropriate Chapter 11 Trustee with Cerner's participation in selecting and appointing the Trustee as a majority creditor.

---

[3] In this regard, it is important to note that Belbadi and Willamette, the only two possible holders of the debt, have steadfastly refused to provide testimony or appear, rendering the utility of such a hearing questionable at best.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 3

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 3 of 25

## II. Core Factual Background.

### A. Sanctions Order, and Debtors' untimely production of 60,000 documents.

On April 26, 2022, this Court entered its Sanctions Order in response to the Debtors' spoliation of evidence, holding that "Debtors are prohibited from presenting *any* testimonial or documentary evidence that is (1) based on electronically stored information, (2) related to the Debtors' assets and liabilities, capital structure, and businesses (3) previously under their control, (4) that they failed to preserve, and (5) to which Cerner does not have access." (ECF No. 691 at 16.) The Sanctions Order went on to provide that the evidentiary sanctions would not apply if "prior to the evidentiary hearing and no later than 30 days from the date of this Order, the Debtors or Belbadi provide Cerner with such spoliated ESI . . ." (*Id.*)

Debtors did not comply with the Sanctions Order's requirement of timely production (as extended), but instead made a massive and untimely production of approximately 60,000 pages of materials at the close of discovery and just days before expert disclosures were to become due. (*See* ECF No. 1325 at 4–6.) Cerner promptly sought relief from the Court on an emergency basis, based on the extreme and manifest prejudice created by the Debtors' actions.

This Court then held a status hearing on March 20, 2024. At the hearing, the Court struck the April 29, 2024 date that had been previously set for an evidentiary hearing on the Debtors' objections to Cerner's Amended Proofs of Claim, and directed the parties to submit further briefing on the issues of: (1) sanctions against the Debtors, and (2) the approach to this matter going forward, including the possibility of scheduling a hearing on the debt or other executable property interests held by Belbadi (*i.e.*, the Execution Motion), or of appointing a Chapter 11 Trustee.

### B. Current analysis of the belated and prejudicial production.

Although Cerner has not yet been able to fully review and analyze the Debtors' massive untimely production, it appears that the materials Debtors produced at the eleventh hour are largely new materials, contrary to counsel's comments at the March 20, 2024 status conference. *See* Declaration of Garrett S. Garfield, dated April 3, 2024 (the "**Garfield Decl.**") at Ex. 1, at 4:17–18

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 4

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH   Doc 1351   Filed 04/03/24   Ent. 04/03/24 18:12:47   Pg. 4 of 25

(Debtors' counsel: "I've being told that a high number, a high percentage of [the belated productions] are duplicates."). However, Cerner's analysis to date indicates that more than half (approximately 56%, or more than 30,000 pages) are _entirely new_. Cerner's analysis continues.

Similarly, Cerner's review to date suggests that the belated production does not consist merely of "families," _i.e._, attachments, to previously produced emails, again contrary to the explanation offered at the most recent status conference. _See id._, Ex. 1 at 4:24-5:3. In fact, Cerner's analysis to date indicates that the belated production contains thousands of pages of wholly-new document families, in addition to instances where parent emails of attachments had not been previously produced. Again, Cerner's analysis continues.

Cerner's limited review has further revealed that the belated production contains highly damaging material to Debtors' previous positions in this litigation (and in the Washington state court litigation that preceded it). Of particular note, the new production reveals that Elhindi, in March and April of 2020 (years after his purported departure from Belbadi and in the midst of the Washington state court litigation), was in direct contact with Belbadi employees for "materials required for the US case," including specific inquiries regarding the content of Belbadi's financial statements, which Cerner now knows unequivocally state that Belbadi holds a debt owed to it by Vandevco. _See_ Garfield Decl., Exs. 4–7. Despite Elhindi's apparent access to this crucial information, Debtors (with Elhindi as their president) nonetheless failed to produce or even to mention these records either during the state court litigation, or when they filed their initial bankruptcy schedules in this matter. Indeed, the vital information revealed by Belbadi's financial statements and other documents would not be disclosed until nearly a year after the Court issued the Sanctions Order.

The belatedly produced documents also include: (i) production of WhatsApp messages among Debtors' current President Nawzad Othman ("**Othman**"), Elhindi, and Belbadi founder and sole owner Ahmed Saeed Al Badi Al Dhaheri ("**Al Badi**"), including deliberation about whether to inform previous outside counsel of a planned six-figure payment that these individuals appear to have believed could potentially violate a temporary restraining order involving Vandevco; (ii) Al Badi and Othman planning

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 5

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 5 of 25

in-person meetings in late 2018 concerning the Cerner litigation; (iii) Elhindi in April 2020 directing a Belbadi employee to *look in Elhindi's desk at the Belbadi office in the UAE* to find loan documents concerning the Vancouvercenter that supposedly supported Debtors' positions in the Washington state court litigation. Garfield Decl., Exs. 2–3, 6.[4]  All of these documents were accessible to Elhindi and to the Debtors, and should have been timely produced in accordance with the Court's Sanctions Order. Even after the depositions of Elhindi and Othman, there was no indication from the Debtors for at least a month of any additional materials, despite requests made on the record at the deposition for further materials.  All of this has resulted in disadvantage and prejudice to Cerner on the core issues in dispute.

III.  **Severe Sanctions Should Be Entered At This Point In This Long-Running Case.**

A.  **Fees and costs caused by the Debtors' discovery violation should be awarded.**

Fed. R. Civ. P. 37(b)(2)(C) provides that in connection with a party's or a party's agent's failure to comply with a discovery order, "Instead of or in addition to [other sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Courts in the Ninth Circuit and elsewhere, including bankruptcy courts, routinely order the disobedient party's attorney to pay all or some of the resulting fees, costs and expenses when Rule 37(b)(2)(C) is at issue. *See, e.g., Sali v. Corona Reg'l Med. Ctr.,* 884 F.3d 1218, 1225 (9th Cir. 2018) (upholding lower court orders sanctioning attorney under Rule 37(b)(2)(C) for discovery misconduct and noting that awarding costs constituted "the mildest of possible Rule 37 sanctions"); *Porter Bridge Loan Co., Inc. v. Northrop,* 556 Fed. Appx. 753, 757-58 (10th Cir. 2014) (sanctioning judgment debtor's attorney for myriad instances of discovery misconduct, including failure to adequately respond to document requests); *Curtis v. Illumination Arts, Inc.,* 957 F. Supp. 2d 1252, 1261-62 (W.D. Wash. 2013) (imposing sanctions under Rule 37 for failure to produce documents, including financial information subject to discovery order); *Berks Behavioral Health, LLC*

---

[4] These do not represent all of the relevant materials, simply those pertinent to this submission and that Cerner's review to date has been able to identify.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 6

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH   Doc 1351   Filed 04/03/24   Ent. 04/03/24 18:12:47   Pg. 6 of 25

*v. St. Joseph Reg'l Health Network* (In re Berks Behavioral Health, LLC), 511 B.R. 55, 60-61 (Bankr. E.D. Pa. 2014) (imposing sanctions against debtor and adversary plaintiff and its counsel for improperly withholding documents); *Gelly v. Safe Transp., Inc.,* No. 3:22-cv-00844-SB, 2023 WL 7652139, at *3 (D. Ore. Nov. 15, 2023) (imposing sanctions against Defendant's attorney in part for failure to respond to discovery requests).

The Ninth Circuit "consistently [has] held that sanctions may be imposed even for negligent failures to provide discovery." *Fjelstad v. Am. Honda Motor Co., Inc.,* 762 F.2d 1334, 1343 (1985); *see also Lew v. Kona Hosp.,* 754 F.2d 1420, 1427 (9th Cir. 1985) ("Even a negligent failure to allow reasonable discovery may be punished."); *Hyde & Drath v. Baker,* 24 F.3d 1162, 1171 (9th Cir. 1994) ("While a finding of bad faith is not a requirement for imposing sanctions, good or bad faith may be a consideration in determining whether imposition of sanctions would be unjust."). Other authorities note that sanctions are appropriate even where the violation of an existing order is claimed to be unintentional. *See Lucas Auto. Eng'g v. Bridgestone/Firestone Inc.,* 275 F.3d 762, 769 (9th Cir. 2001) (affirming sanctions where party asserted that failure to appear was not intentional); *Berks Behavioral Health*, 511 B.R. at 55 (concluding that negligence, even if accepted at face value, was "no justification for not complying with a discovery order and imposing sanctions); *Krishnan v. Cambria Health Sols. Inc.*, No. 2:20-cv-00574-TL, 2022 WL 1468892, at *3 (W.D. Wash. May 10, 2022) (awarding sanctions after party made a sizable production of documents less than two weeks before the end of the discovery period, which "deprived [the party] of a significant majority of documentary evidence they had a right to when considering and preparing for discovery, including depositions"); *United Artists Corp. v. United Artist Studios LLC*, No. 2:19-cv-00828-MWF-MAA, 2019 WL 4640403, at *3-4 (C.D. Cal. Aug. 28, 2019) (rejecting "unintentional delay" as a defense to a belated production and awarding sanctions).

Here, the Debtors' violation of the Court's previous Sanctions Order is clear. That order expressly required timely production of spoliated materials from the UAE within 30 days, which deadline was then extended in good faith through May 1, 2023. (*See* ECF No. 691 and 937). The

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 7

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 7 of 25

production of approximately 60,000 pages of additional materials that were apparently known to both Debtors' principals and their counsel almost nine months later, after key depositions had been taken and substantial work had been done on initial expert reports, proposed stipulated facts, and other pre-trial filings, and at the very end of the discovery period, was not timely and was a violation of the express terms of the Sanctions Order.

The Debtors' previous discovery obstruction and resulting motion practice led to this Court's finding that the Debtors and Elhindi had spoliated electronic data. (*See* ECF No. 691.) Following that finding, the Debtors were then permitted to engage an e-discovery vendor of their choice (Kroll)—at significant expense to the estate—to gather and produce the spoliated materials from the UAE that the Debtors (and their then-president Elhindi ) knew existed and, therefore, should have gathered and produced in the first place. Indeed, Kroll has now been paid more than ***$425,000*** from estate funds in connection with its work in this case. (*See* ECF Nos. 740, 800, 907, 969, 1181 and 1302.) Yet according to Debtors, all this delay and expense was substantially wasted, with neither the Debtors nor their vendor able to properly manage the production due to vague "technical issues." Indeed, as discussed above, even at the March 20 status hearing, counsel for Debtors was not able to explain the issue or even to confirm that anyone at Kroll was working on an explanation. *See* Garfield Decl., Ex. 1 at 4:10-5:20 (claiming that "there has been changeover in who is helping [Debtors] at Kroll" and that Debtors' "primary point of contact at Kroll has been out of town for a week and a half," which "caused some delays"). As of the date of this submission, Cerner is still unaware of any coherent explanation of the purported technical problems, or why the alleged problems were only discovered months after production was understood to be substantially complete. Cerner further notes that the U.S. Trustee shares this view, and has rejected the position that the belated production was merely "supplemental." (*See* ECF No. 1349 at 4.)

At best, the record thus reflects that the Debtors, their counsel, and their e-discovery vendor negligently failed to properly manage and produce the very materials that this Court expressly ordered must be timely produced in order to avoid sanctions for spoliation. *See Fjelstad*, 762 F.2d at 1343. At

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 8

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 8 of 25

worst, the record reflects that the Debtors and Elhindi first spoliated relevant evidence, then attempted to sandbag Cerner with a production of tens of thousands of pages of relevant documents at the very close of discovery, in a cynical effort to ensure that Cerner would not have any meaningful opportunity to review and use them. *See, e.g.*, *Curtis v. Illumination Arts, Inc.,* No. C12-0991JLR, 2013 WL 6173799, at *17 (W.D. Wash. Nov. 21, 2013) ("Even Defendants' last minute production of additional documents has not remedied Plaintiffs' prejudice. Due to their late production, Plaintiffs have had no opportunity to utilize the documents in depositions or otherwise to flesh out the record . . .").

Here, sanctions in the form of all fees and costs caused by the Debtors' untimely and prejudicial production in violation of the Sanctions Order are thus called for under Rule 37(b)(2)(C), including all fees and costs associated with hearings and briefing on the issue, with any further review of materials made necessary by the belated production, and with any continued or further depositions that may become necessary based on further rulings of the Court or developments in this matter. Moreover, under the circumstances, such award should not be assessed solely against the Debtors' dwindling estates, but from Debtors' management and counsel.

## B.    Dispositive sanctions are necessary and appropriate.

Terminating sanctions under Fed. R. Civ. P. 37 and the Court's inherent authority are authorized for a party's failure to obey a discovery order. *See Anheuser-Busch, Inc. v. Nat'l Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Dismissal is also authorized where a party conceals electronically stored information with intent to deprive another party of the information's use in the litigation. *See* Fed. R. Civ. P. 37(e)(2)(C); *Roadrunner Transp. Servs. Inc. v. Tarwater*, 642 Fed. Appx. 759, 759–60 (9th Cir. 2016) (awarding default judgment and fee award in connection with deletion of emails during litigation).  Dispositive sanctions against a party for discovery violations are appropriate when a court finds "willfulness, fault, or bad faith." *Anheuser-Busch*, 69 F.3d at 348. There must be a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threaten[s] to interfere with the rightful decision of the case." *Id.* (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1981)). The Ninth Circuit sets out five factors to be considered with

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 9

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 9 of 25

respect to terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch*, 69 F.3d at 348.

At this point in this long-running case, these factors weigh heavily in favor of a dispositive sanction in the form of a denial of the Debtors' objections to Cerner's Amended Proofs of Claim, as well as Debtors' objections to the Execution Motion.[5] The first two factors—expeditious resolution of litigation and the Court's need to manage its docket—plainly counsel in favor of dismissal. This bankruptcy proceeding is now in its fourth year, and has already been significantly delayed by the Debtors' spoliation of evidence, combined with Belbadi's outright refusal to participate in discovery until this Court imposed sanctions against the Debtors. Now, after years of effort and enormous use of estate and party resources, the Debtors' discovery conduct has violated the Court's Sanctions Order and once again upended these proceedings. Such delays have resulted in ongoing drain on the estate's assets, a substantial increase in Cerner's cost of litigation, and a significant waste of the Court's and the parties' time and resources.

The third factor of risk of prejudice to Cerner is likewise abundantly clear. Authorities imposing sanctions under Rule 37—up to and including dismissal—are very clear that belated and prejudicial production of documents is not in keeping with the rules and does not avoid sanctions. Rather, the Ninth Circuit has "squarely rejected the notion that a failure to comply with the rules of discovery is purged by belated compliance." *Anheuser-Busch*, 69 F.3d at 354. Similarly, "[l]ast minute tender of documents does not cure the prejudice to the opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

---

[5] Indeed, the U.S. Trustee's recently-filed statement of its position specifically contemplates the possibility of "a terminating sanction as to the issue of the Debtors' liability to Cerner Middle East." (*See* ECF No. 1349 at 4.)

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 10

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Courts further note that the prejudice from an untimely production arises because it deprives the other party of the opportunity to fairly use the materials in depositions or in connection with trial preparation. *See Curtis*, 2013 WL 6173799, at *17 ("Even Defendants' last minute production of additional documents has not remedied Plaintiffs' prejudice. Due to their late production, Plaintiffs have had no opportunity to utilize the documents in depositions or otherwise to flesh out the record . . ."); *see also Krishnan*, 2022 WL 1468892, at *3 (awarding sanctions after party made a sizable production of documents less than two weeks before the end of the discovery period, which "deprived [the party] of a significant majority of documentary evidence they had a right to when considering and preparing for discovery, including depositions"). The same rationale was held to support sanctions of dismissal in *Payne v. Exxon*, where "[t]he issue is not whether [defendants] eventually obtained the information that they needed, or whether plaintiffs are now willing to provide it, but whether plaintiffs' repeated failure to provide documents and information in a timely fashion prejudiced the ability of [defendants] to prepare their case for trial." *Payne*, 121 F.3d at 508.

Here, the prejudice to Cerner is palpable. The deadline for production set out in the Court's Sanctions Order has long since passed, and the parties have been litigating for months with the understanding that the Court's Sanctions Order had been followed, and that the Debtors had obtained from Belbadi and produced all of the spoliated materials relating to the Debtors' assets and liabilities, capital structure, businesses, and other documents that would be relevant to the April 29 alter ego hearing. Significant estate funds amounting to approximately $425,000 were used to pay Kroll, apparently without the effect of actually causing a proper or complete production. For its part, Cerner expended significant money and resources reviewing and digesting the materials that were produced in May 2023, and prepared its trial strategy accordingly. Crucial depositions, including of the Debtors' current and former principals, have already occurred based on the previous production—including motion practice regarding conducting the depositions in-person.

Most importantly, the recently-produced evidence further demonstrates not merely prejudice, but bad faith or fault. Documents included in the belated production for the first time confirm that in

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 11

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 11 of 25

March and April of 2020, *See* Elhindi was corresponding by email directly with Belbadi personnel, specifically in connection with the lawsuit that was then proceeding in the Washington Superior Court. Garfield Decl. Exs. 4–7. This correspondence shows that in connection with the litigation, Elhindi asked specifically about Belbadi's financials, any A/R they show from Vandevco, and what the balance was. *Id.* Ex. 7. Further discussions during this time period among the Belbadi personnel with whom Elhindi was communicating likewise demonstrate Belbadi's own understanding that it is owed a significant debt from Vandevco. *Id.* The recently-produced evidence also reveals that, during the course of the state court litigation, Elhindi attempted to selectively obtain evidence from Belbadi personnel that he believed would be advantageous to the Vandevco's and Belbadi's positions, while actively concealing from Cerner documents that damaged their position. For example, in April 2020, Elhindi instructed a Belbadi employee to search his desk at Belbadi's UAE headquarters to find Vancouvercenter-related loan documents, apparently based on the (erroneous) belief that it could be beneficial to Debtors. *Id.* Ex. 6. This is also consistent with communications demonstrating that in the week between the two evidentiary hearings that occurred in August 2020, Elhindi—who knew he would be called as a witness—repeatedly contacted Belbadi personnel to obtain and review documents that he apparently believed would support the Debtors' position. *Id.* Ex. 8. All the while, Elhindi concealed from Cerner documents such as the Belbadi financial statements, undoubtedly because he knew they contradicted Vandevco's position taken in the Washington state court litigation that Vandevco's debt was held by Willamette. Elhindi's decision to pick and choose the information to be provided to Cerner depending on the perceived advantage in the parties' litigation both needlessly prolonged this litigation and is the epitome of bad faith conduct warranting the most severe sanctions.

Of course, Debtors would not actually produce the Belbadi financial statements (or any materials related to Belbadi's annual audits by KPMG) either in the state court matter or in this bankruptcy proceeding until years later, and only after this Court had entered its Sanctions Order requiring production of spoliated materials from the UAE. Nor did Elhindi even mention the Belbadi financial statements or Belbadi's treatment of the Vandevco debt when he submitted an amended

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 12

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 12 of 25

declaration in the state court in July of 2020. In that amended declaration, Elhindi changed his prior testimony and stated that the initial seed money for the Vancouvercenter project had been lent to Vandevco by Willamette rather than Belbadi. However, the emails that have now been produced demonstrate that Elhindi (the CEO of both entities at the relevant times) must have known this statement did not accord with Belbadi's treatment of the debt. It further necessarily follows that Elhindi must have known that Vandevco's initial schedules filed in this matter listing a debt owed to Willamette were false, or at a bare minimum did not represent the full truth. Yet the Debtors would only correct this misstatement by filing amended schedules adding Belbadi as a general unsecured creditor on September 26, 2023, after Belbadi was required to produce in discovery the same financial statements and information that Elhindi had specifically inquired about in April of 2020. (*See* ECF 1045-2 (noting, "The basis of the claim is Vandevco's upstream owner Belbadi's financial statements list Vandevco as Belbadi's debtor.")).

The prejudice and waste resulting from Debtors' failure to provide information that they had access to is shocking—if Belbadi's information and documents revealing the existence of a debt in Washington had been properly provided at the outset of this matter, years of costly and needless litigation could and would have been avoided. These circumstances demonstrate "willfulness, fault, or bad faith" on the part of Elhindi and the Debtors (Elhindi was president of the Debtors at the relevant times), amply justifying dispositive sanctions in the egregious circumstances of this case. Dispositive sanctions are available both under Rule 37(b)(2)(A) (disobedience to discovery order); and Rule 37(e)(2)(C) (acting with intent to deprive another party of the use of electronically stored information). Elhindi's conduct in selectively providing only certain information from Belbadi while withholding or failing to obtain other information passes the level of mere recklessness and amounts to the kind of willfulness, fault, or bad faith supporting dispositive sanctions in this matter.

Finally, the fourth and fifth Anheuser-Busch factors do not change the result in light of the other factors present in this case. When considering the availability of less drastic alternatives to dismissal, courts in the Ninth Circuit look to whether alternative sanctions were explicitly discussed, whether the

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 13

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 13 of 25

court implemented alternative methods of sanctioning before ordering dismissal, and whether the court warned of the possibility of dismissal. *See Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (1987). Here, the Court has already attempted alternative sanctions in response to the Debtors' spoliation of evidence, in the form of its previous appointment of an examiner and the resulting Sanctions Order. However, the Debtors' recent belated production of documents again violated both the letter and the spirit of the Sanctions Order, demonstrating that lesser sanctions have been ineffective. Moreover, the Sanctions Order expressly discussed the possibility of a dispositive sanction, and denied Cerner's request at the time without prejudice. (*See* ECF No. 691 at 15.) Debtors were accordingly warned in advance that outright denial of their objections to Cerner's Proofs of Claim may be ordered based on further evidence regarding Elhindi's intent. That evidence has now come to light, as discussed above. In these circumstances, the Court should enter dispositive sanctions.

### C. Conclusion regarding sanctions—the Court should impose a full range of sanctions in the egregious and prejudicial circumstances of this case.

In short, Debtors' conduct,[6] including their discovery violations, has resulted in extreme and manifest prejudice to Cerner, as well as upending the orderly administration of this matter. In these egregious circumstances, the Court should impose the full range of available sanctions, including: (1) an award of fees and costs; (2) a dispositive sanction denying the Debtors' objections to Cerner's Amended Proofs of Claim, such that Cerner's claim is allowed in full; and (3) a limited dispositive sanction denying the Debtors' objections to the Execution Motion, such that Cerner is deemed an allowed creditor with respect to the approximately $11 million debt scheduled as owed to either Belbadi or to Willamette.

As set out further below, such dispositive sanctions should further lead to the appointment of an appropriate Chapter 11 Trustee, with Cerner's input as a majority creditor.

---

[6] Including pre-petition conduct as outlined below.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 14

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

**IV.    Resolution of Execution Motion and appointment of Chapter 11 Trustee.**

The Court has requested the parties' positions regarding the relationship between the now-cancelled hearing on the alter ego relationship between the Belbadi Group and the Debtors, the previously-filed Execution Motion regarding the judgment entered in Cerner's favor against Belbadi (the "**UAE Judgment**"), and the appointment of a Chapter 11 Trustee.

Section 1104(a) provides that a trustee may be appointed "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . ." 11 U.S.C. § 1104(a); *see also In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999) (affirming appointment of a Chapter 11 trustee due to debtor's pre-petition misconduct and the best interests of the estate). In *Lowenschuss*, for example, the Ninth Circuit affirmed the appointment of a Chapter 11 Trustee because of attempts to transfer the debtor's assets outside the jurisdiction of the bankruptcy court, as well as the hopelessly conflicted positions of the debtor's management. *Id.*; *see also In re North*, 212 Fed. Appx. 626, 627 (9th Cir. 2006) (affirming appointment of Chapter 11 trustee due to debtor-in-possession's failure to comply with the Bankruptcy Code and orders of the Bankruptcy Court).

Cerner submits that there are ample reasons to appoint a Chapter 11 Trustee in this case for cause under 11 U.S.C. § 1104(a), which include but go well beyond the latest instance of a serious, costly, and prejudicial discovery violation.[7] Cerner's position is that a Chapter 11 Trustee should be appointed. However, in light of the circumstances and history of this matter, the appointment of a Trustee should not occur in a vacuum. Rather, Cerner seeks the opportunity to participate in the selection of the Trustee, as opposed to having a Trustee being appointed immediately without Cerner's input. *See* 11 U.S.C. § 1104(b); *see also* 11 U.S.C. § 702. Here, if Cerner's Amended Proofs of Claim are allowed, or if Cerner prevails with respect to its Execution Motion, Cerner will necessarily be entitled to seek appointment of a Trustee of Cerner's choice, as the largest creditor of the Debtors'

---

[7] Again, the U.S. Trustee shares the view that a Chapter 11 Trustee is appropriate. (*See* ECF No. 1349.)

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 15

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 15 of 25

estate. As noted above, this issue can and should be resolved through dispositive sanctions entered against the Debtors for their bad faith discovery conduct.

If the Court does not elect to enter dispositive sanctions against the Debtors, Cerner submits that the Court should in that instance summarily resolve the Execution Motion based on the existing record and the evidentiary sanctions already entered in the Court's Sanctions Order, or should set a hearing to resolve the Execution Motion and determine the existence of Belbadi's executable property interests under Washington law. To be clear, Cerner's ultimate position is that a Chapter 11 Trustee should be appointed—Cerner simply seeks the opportunity to first establish its status as a majority creditor and corresponding right to participate in the selection and appointment of the Trustee.

**A.** **Timing and circumstances of appointment of Chapter 11 Trustee.**

Cerner's position on the timing and nature of the appointment of a Chapter 11 Trustee is intimately connected to the history of this matter and the inequitable present circumstances that the Debtors have caused. At core, Elhindi has controlled the Debtors, Willamette, and Belbadi at various material times. Purported creditor and shareholder entities Willamette and Belbadi refuse to participate in discovery or to file proofs of claim, while they control the Debtors via management rights afforded by this very bankruptcy proceeding. This is a wholly inequitable and untenable situation that must be remedied in due course, particularly now that this proceeding has been disrupted in the eleventh hour.

**i.** **Debtors' pre-petition conduct.**

Because of the extremely long and contentious history of this matter, Cerner sets out below a summary of its current views and positions, which set out important background and context for the relief that Cerner seeks. Even if such positions are disputed, they outline the work of any Trustee who may be appointed. First, there is no question that the Debtors have regularly and routinely transferred the Debtors' assets out of the jurisdiction in the midst of the Cerner litigation on a pre-petition basis, and spoliated evidence. Moreover, Cerner contends that the Debtors engaged in serious and wrongful asset devaluations pre-petition (but in response to the largest alleged estate creditor, Cerner).

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 16

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 16 of 25

In 2016, when this action began in the Washington Superior Court (the "**State Court**"), that court was requested to appoint a receiver to protect the Debtors' assets pending adjudication of the substantive issues in this matter, which concerned a breach by Belbadi of two unconditional guarantees issued to Cerner. This action would have *prevented* significant loss to the Debtors' true stakeholders. A temporary restraining order ("**TRO**") was entered by the State Court prior to its adjudication of Cerner's motion for attachment and appointment of a receiver. That TRO remains in effect, and has always, other than as modified by this Court's orders, been in effect, given the federal district court's lack of subject matter jurisdiction. Indeed, as was ultimately concluded by the Ninth Circuit Court of Appeals, Vandevco and Belbadi *incorrectly* removed the Cerner litigation to federal court, which then had to be remanded to the State Court based on the lack of federal jurisdiction. After remand, the State Court confirmed that the TRO was valid when issued and would remain in effect pending the outcome of the litigation.

Unfortunately, during the interim period between the issuance of the TRO in July of 2016 and the remand to State Court in December 2019, the Debtors obtained a long-sought opportunity to *both finance and complete* the final building of the Vancouvercenter and then-staging-area-Block-10 – with the Holland Partner Group (collectively, "**HPG**") (the "**HPG Opportunity**"). The HPG Opportunity would have benefited the Debtors. Instead, and due to the ongoing Cerner litigation, Debtors' management determined to convert the HPG Opportunity to an outright, single-bidder, fire sale (the "**Fire Sale**"). The already-non-market Fire Sale price was then *lowered* by nearly $500,000 *within days* after Cerner filed its emergency application with the Ninth Circuit to enjoin entirely the Fire Sale transaction. *After* the Washington federal district court (at the instruction of the Ninth Circuit) directed that certain of the proceeds of the Fire Sale be deposited in escrow (the "**Proceeds Order**"), the Debtors next corruptly arranged with HPG to sell additional valuable property to HPG—consisting of a parking lot option and certain development rights—so that HPG could pursue an opportunity to build its headquarters in Block 10, across from the Vancouvercenter. These rights were discounted from their $1 million initial fire-sale price by at least $500,000 on the condition that the proceeds go not into

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1)
DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11
TRUSTEE
CASE NO. 20-42710-MJH – PAGE 17

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 17 of 25

escrow (as required by the Proceeds Order), but rather a Vancouvercenter subsidiary "tenant rents" account which in turn was subject to a Belbadi assignment – an intentional evasion of a Court order by both HPG and Debtors (the "**Option and Development Right Dissipation**").

The consequences of the Fire Sale and the Option and Development Right Dissipation on Debtors' assets were and are substantial. The Debtors *should* have been a participant in the HPG Opportunity, wherein their participation rights would have been defined by the capital contributions of the Debtors, including, but not limited to, the Option and Development Rights. However, in the summer of 2020, when it became clear that the hearing in the State Court was likely to result in a ruling against Vandevco and Belbadi, the Debtors began a campaign of deceit and fraud on the courts, which has continued unabated through the present day. At all times material, and contrary to what the Debtors and their counsel averred to the State Court and this Court, Elhindi (and thus the Debtors) would have had access to Belbadi's financial statements, which financials clearly indicate a debt owed by Vandevco to Belbadi. This should have ended any and all further inquiry under circumstances where Belbadi, by all accounts, retained an indirect but total interest in the same. Instead, the Debtors lied to the State Court and this Court while planning the Debtors' bankruptcy, and failed to disclose the plainly-relevant information bearing on the Debtors' capital and debt structure. This alone constituted "fraud [or] dishonesty" justifying appointment of a Chapter 11 Trustee. *See* 11 U.S.C. § 1104(a)(1).

Further, knowing that a bankruptcy filing was imminent and while planning this bankruptcy, the Debtors arranged for a "consent judgment" to be entered in favor of the insider Othman Group, LLC ("**Othman Group**") in a transparent attempt to create a "judgment lien" in Othman Group's favor. Only after the State Court judge presiding over the matter sharply criticized the submission of the "consent judgment" did the Debtors then change course and vacate it. They further schemed to cause Cerner to expend resources unnecessarily by choosing to make the bankruptcy filing late in the evening the day before the evidentiary hearing in the State Court was set to resume, after a nearly four-month break. Importantly, the bankruptcy was being planned prior to the commencement of the State Court trial and could have been commenced for the same ostensible purpose prior to June of 2020.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 18

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 18 of 25

Next, in the course of the litigation in the State Court, the judge ordered discovery from HPG. The Debtors further worked with HPG to bury these wrongful and criminal acts, having already conspired to help Belbadi and the Debtors evade their obligations. Proximate to this wrongful conduct, the Debtors' estates now have significant claims against HPG, which has both benefited from and helped coordinate the wrongful conduct. The Debtors' claims against HPG were initially tolled by virtue of the Debtors' bankruptcy filings and the import of 11 U.S.C. § 108, providing for a two year tolling of all civil claims. Near the expiration of the two year tolling period, at Cerner's insistence, the Debtors entered into claim tolling agreements with the Debtors' insiders (including Elhindi and Othman), Willamette, HPG, and others.

HPG and the Debtors then continued their conspiracy to avoid responsibility for their conduct. HPG agreed to pay for and use its counsel to defend Cerner's alter ego claims against the Debtors in particular as it related to the Fire Sale, while at the same time, the Debtors and HPG entered into an agreement whereby the Debtors would file an ill-conceived related adversary proceeding (captioned 23-04046-MJH) against Cerner, using estate resources to seek a declaratory judgment that HPG (and the Debtors' insiders) had done nothing wrong, *underline*diminishing*/underline* the value of the estate (the "**Declaratory Judgment Action**").[8]

The direct damages associated with the Fire Sale and the Option and Development Right Dissipation, and other actions outlined above, are substantial and outline the scope of work of the to-be-appointed Chapter 11 Trustee. For these reasons, and even if this bankruptcy should have been dismissed in the first instance, its continuation under the auspices of a Chapter 11 Trustee is now essential.

### ii. *Debtors' previous and current discovery violations.*

As noted above, after the Court's initial Sanctions Order, and after significant resources had been expended to obtain the spoliated materials from the UAE, the Debtors then represented to Cerner

---

[8] The as-filed Declaratory Judgment Action also contained numerous material misstatements, including that the Debtors had conducted an "investigation" into the Fire Sale transaction when in fact they had not.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 19

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

and the Court that such discovery was essentially complete, resulting in a series of depositions in advance of the scheduled claims hearing to determine the alter ego relationship between the Belbadi Group and the Debtors.  Only after these key depositions occurred and without other warning of the huge volume of unproduced materials, the Debtors then produced an additional approximately 60,000 pages of documents, upending these proceedings and requiring that the hearing that had been previously set to begin very shortly be removed from calendar.

### iii.      Appointment of the *right* Chapter 11 Trustee, at the *right time*.

Under *these* circumstances the Court must now assess the appropriate steps to be taken, and the relationship between any sanctions and the patent need for a Chapter 11 Trustee.  From this point forward, Cerner contends the important issue is not just that *any* Trustee be appointed, but that the *right* Trustee be appointed—so as to maximize stakeholder recovery.  The most crucial Trustee attributes are: (i) the ability to absorb the complex factual and procedural history of this case; and (ii) the ability to embark upon any appropriate malpractice, tort, and fees clawback or similar litigation under equally complex fact patterns.  There is no question that the Trustee will need to possess the resolve necessary to investigate powerful local interests such as HPG, the Debtors' management, and Debtors' counsel in respect of legal process abuse and fee clawback.

Further, to prevent dissipation of what this Court has described as "institutional knowledge" concerning the Debtors, HPG, and their history with Cerner, the Chapter 11 Trustee would be free to either hire Cerner's counsel as special litigation counsel, or proceed to create a estate litigation trust which in turn could hire counsel with the same effective outcome—thereby avoiding the significant expense associated with coming up to speed in this long-pending and complex matter. In light of the long history and the matters set out above, the choice of trustee is sufficiently important that Cerner would ultimately prefer if necessary to first resolve the validity of a portion of its claims through a determination of the Execution Motion regarding Belbadi's executable property interests, although noted above, this issue can and should be resolved as a sanction for the Debtors' bad faith conduct and violations.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 20

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 20 of 25

Under the circumstances, Cerner respectfully submits that from the Court's perspective, the issue comes down to cost—both cost to Cerner and cost to the Debtors. Even a short evidentiary hearing on the Execution Motion would likely cost Cerner and the Debtors hundreds of thousands of dollars, while the originally-scheduled hearing on the alter ego relationship between the Belbadi Group and Debtors would likely cost millions in light of the Debtors' discovery violations and belated production, including the "re-do" of the depositions already taken in this matter to date—plus any following appeals.[9]

**B.      The Court should grant the Execution Motion based on the existing record and the evidentiary sanctions already imposed by the Sanctions Order.**

For all of these reasons, Cerner submits that the Court should summarily grant Cerner's well-founded Execution Motion on its merits and if necessary, based on application of the evidentiary sanctions already set out in the Sanctions Order. In particular, there is good reason to believe that there never has been—and is not now—any good faith defense to Cerner's Execution Motion and the evidence demonstrating an executable debt interest held by Belbadi. Rather, any defenses appear to be only bad faith defenses predicated on the perjurious or wholly incredible testimony of one man—Elhindi—who was the president or CEO of all the relevant entities at the relevant times. Othman, who represents the entirety of the Debtors' current management, has no firsthand knowledge on the subject. The Debtors' expert likewise has no firsthand knowledge and has relied on Elhindi and upon accountants instructed by Elhindi.

The simple fact is that everyone agrees that the Debtors owe a debt—the largest debt in this bankruptcy other than Cerner's—and that such debt is owed to _either_ Willamette _or_ Belbadi. (_See_ ECF No. 1045-2.) If this debt is owed to Belbadi, then there is no question that Cerner can execute upon it to satisfy a portion of the amounts owed to Cerner by Belbadi under the UAE Judgment. Cerner would thereby obtain status as the Debtors' largest creditor, including with respect to the right to seek

---

[9] All of which Debtors'-side costs being without prejudice to the Court and creditor(s)' rights to seek disgorgement of all Debtors and creditor incurred fees in this matter.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 21

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 21 of 25

appointment of a Chapter 11 Trustee. If this debt were determined to be owed instead to Willamette, that is ultimately of no moment because Washington law would still permit Cerner to execute on Belbadi's interest in this debt, where Belbadi is the unquestionable ultimate beneficial owner of both the Debtors and Willamette, and is the beneficiary of the same debt.[10]

The evidence in support of Belbadi's executable property interests—including acknowledgments of the debt owed directly by Vandevco to Belbadi that were signed by Elhindi in his capacity as president of Vandevco (while simultaneously serving as CEO of Belbadi)—is substantial. That debt is of course further reflected in Belbadi's own financial statements. That Elhindi may have later, in the context of litigation, asserted that the debt was actually owed to Willamette is not germane—Elhindi simply cannot purport to create any genuine dispute of fact simply by contradicting his own previous statements. There is also abundant evidence supporting the same proposition, including the decades-long practice of Belbadi taking ownership of and receiving direct payments from the Debtors in connection with this same debt, and Willamette's fundamental inability to even hold debt or any property other than shares, as a designated Cayman Islands "pure equity holding company." Willamette's limitations are themselves supported by multiple instances of contemporaneous evidence where Elhindi describes Willamette's total lack of assets aside from the shares of the Debtors.

Meanwhile, _despite being before this Court_, Willamette has never filed a proof of claim or made any direct assertion that it is owed a debt, while Belbadi's audited financial statements speak for themselves (_i.e._, that the debt is owed to Belbadi). Meanwhile, Belbadi continues to object to simple depositions and maintains its long-running position that it will not participate in discovery. In a circumstance where Vandevco agrees that it owes the debt, but the only two possible candidates for the relevant creditor have taken no steps to assert an interest in that debt (and in Belbadi's case have refused outright to participate in these proceedings), any further evidentiary hearing on the issue would likely serve only to further squander resources.

---

[10] In any event, Willamette is also clearly the alter ego of Belbadi.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 22

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 22 of 25

Finally, on top of the overwhelming evidence of an executable debt interest held by Belbadi, this Court has further already ruled in its Sanctions Order that the Debtors are prohibited from presenting testimonial or documentary evidence based on the electronically stored information that they failed to preserve, if such information were not timely produced. (*See* ECF No. 691 at 16.) As set out at length above, it is now plain that the Debtors violated the Sanctions Order by failing to timely produce all such materials. In the face of a massive and untimely production of relevant materials, Cerner should at a minimum be entitled to favorable inferences (and conversely, the Debtors should be subject to adverse inferences) with respect to any potential issues remaining with respect to the evidence of the debt owed to Belbadi by Vandevco. Indeed, such information goes directly to the Debtors' "assets and liabilities, [and] capital structure," which was the precise subject of the Court's Sanctions Order.

For these reasons, the Court is already amply justified to rule in Cerner's favor on the well-founded and fully-briefed Execution Motion, without the time and expense of further hearing or evidence. At a minimum, such a ruling would establish that Cerner is a creditor in this bankruptcy in the scheduled amount of approximately $11 million, making it appropriate for this Court to then proceed further to appoint a Chapter 11 Trustee with Cerner's status as the majority creditor established.

**C.      In the alternative, the Court should schedule a hearing on the Execution Motion.**

Finally, if the Court elects not to grant the Execution Motion either as a limited dispositive sanction, or elects not to grant the Execution Motion based on the existing record, Cerner submits that the Court should schedule a hearing to resolve the Execution Motion.  Prior to any such hearing, of course, a determination would be necessary as to how to treat the steadfast refusal of the only purported holders of the debt that is subject to the Execution Motion—*i.e.*, Belbadi and Willamette—to testify and give evidence.  In any event and as set out at length above, Cerner expects that the result of such a hearing will be that Cerner is deemed a majority creditor in this bankruptcy. At that point, Cerner would then request that the Court proceed quickly to appointment of a Chapter 11 Trustee with Cerner's participation as majority creditor.

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE
CASE NO. 20-42710-MJH – PAGE 23

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone:  503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 23 of 25

## V.    Conclusion.

The history and circumstances of the Debtors' pre-petition and post-petition conduct have now culminated in the latest discovery violation, which has caused extreme prejudice to Cerner and derailed these proceedings in the eleventh hour. Against this backdrop, this Court is amply justified in entering sanctions in the form of fees and costs, as well as dispositive sanctions resulting in Cerner's claim in this bankruptcy being allowed in whole or in part.

Further, if the Court elects not to enter dispositive sanctions, prompt resolution of Cerner's Execution Motion—and corresponding resolution of Cerner's status as majority creditor—will then permit appointment of an appropriate Chapter 11 Trustee with Cerner's participation, and represents a practical path forward in this matter.

Cerner looks forward to the further status hearing set in this matter to discuss these important issues with the Court.

Dated: April 3, 2024

HOLLAND & KNIGHT LLP

By:    *s/ Garrett S. Garfield*
Garrett S. Garfield, WSBA No. 48375
E-mail: garrett.garfield@hklaw.com
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300
Fax: 503.241.8014

Warren E. Gluck, *Pro Hac Vice*
Email: warren.gluck@hklaw.com
787 Seventh Avenue
New York, New York 10019
Telephone: 212.523.3200

Richard A. Bixter, Jr., *Pro Hac Vice*
Email: richard.bixter@hklaw.com
150 N. Riverside Plaza, Suite 2700
Chicago, Illinois 60606
Telephone: 312.422.9032

*Counsel for Creditor Cerner Middle East Limited*

CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1)
DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11
TRUSTEE
CASE NO. 20-42710-MJH – PAGE 24

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

Case 20-42710-MJH    Doc 1351    Filed 04/03/24    Ent. 04/03/24 18:12:47    Pg. 24 of 25

## CERTIFICATE OF SERVICE

I hereby certify that, on April 3, 2024 I caused to be electronically filed the foregoing CERNER MIDDLE EAST LIMITED'S BRIEF REGARDING: (1) DISCOVERY SANCTIONS; AND (2) APPOINTMENT OF CHAPTER 11 TRUSTEE and served electronically via this court's CM/ECF case management system upon all parties registered for the above-numbered and above captioned cases.

*s/ Garrett S. Garfield*

CERTIFICATE OF SERVICE – Page 1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, Oregon 97204
Telephone: 503.243.2300

#245583302_v2