**Below is a Memorandum Decision of the Court.**

*Mary Jo Heston*

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

VANDEVCO LIMITED and ORLAND LTD.,

              Debtors.

Case Nos:

20-42710-MJH (Lead Case)

20-42711-MJH (Jointly administered under Case No. 20-42710-MJH)

### MEMORANDUM DECISION ON DISCOVERY SANCTIONS

      This matter came before the Court on July 18, 2024, on the Court's Interim Order Awarding Sanctions and Scheduling Hearing and Additional Briefing ("Interim Order Awarding Sanctions"). ECF No. 1364. The Court, having considered the arguments of counsel and the record as set forth below, states its opinion as follows:

### I. PROCEDURAL HISTORY

      This case has an extensive background involving numerous discovery disputes, many that arose prior to the bankruptcy filings. Relevant to the matter currently before the Court, on June 24, 2021, Cerner Middle East Limited ("Cerner") issued its First Set of

Requests for Production ("First RFPs") to Vandevco Limited and Orland Ltd. (collectively "Debtors"). Garrett S. Garfield ("Garfield") Decl. Ex. 1, ECF No. 1449-1. These included a request for "all documents related to communications between owners, directors, officers, or employees of Belbadi, on the one hand, and owners, directors, officers, or employees of Orland, Vandevco, or any of the Van Subs." *Id*. at Req. for Prod. No. 42.

On August 3, 2021, Cerner filed Creditor Cerner's (A) Motion to Compel Belbadi Enterprises, LLC ("Belbadi") to Turnover Debtors' Books and Records and (B) Motion to Compel Discovery from Belbadi ("Motions to Compel"). ECF No. 295. The Motions to Compel was set for hearing on August 20, 2021.

During the August 20, 2021 hearing on Cerner's Motions to Compel, the Court directed Cerner to submit a second request for production to Debtors ("Second RFPs"). Tr. of August 20, 2021 Hr'g 28:9-13, ECF No. 349. Cerner sent the Second RFPs to the Debtors on August 24, 2021. Garfield Decl. Ex. 3, ECF No. 1449-3. In the Debtors' response on August 26, 2021, the Debtors claimed to have "produced all responsive documents in their possession, custody or control." Debtors' Resp. to Second RFPs 1:5-7, ECF No. 346.

On October 26, 2021, Cerner filed a Motion to (A) Compel Debtors to Seek Turnover of their Books and Records, or in the Alternative, (B) Appoint a Chapter 11 Trustee and a Motion to Compel Discovery from Belbadi. ECF Nos. 459 and 460. On March 29, 2022, Cerner filed a Request for Relief in connection with these two motions and noted the matters for hearing on April 19, 2022. ECF No. 661.

After the April 19, 2022 hearing, the Court entered an Order on Cerner's Motions to Compel (ECF No. 661) ("Order on Motions to Compel"). ECF No. 691. The Court

> **ORDERED** that at the evidentiary hearing on the Debtors' Objection to Cerner's Claim, the Debtors are prohibited from presenting *any* testimonial or documentary evidence that is (1) based on electronically stored information, (2) related to the Debtors' assets and liabilities, capital structure, and businesses (3) previously under their control, (4) that they failed to preserve, and (5) to which Cerner does not have access; it is further

> **ORDERED** that if, prior to the evidentiary hearing and no later than 30 days from the date of this Order, the Debtors or Belbadi provide Cerner with such

spoliated ESI related to the Debtors' assets and liabilities, businesses, and capital structure in Belbadi's possession, the Debtors will not be prohibited from presenting such testimonial or documentary evidence as set forth above.

*Id.* at 16:8-18.

On June 6, 2022, the Court entered an Order Granting Cerner's Petition for Attorneys' Fees and Costs Award Pursuant to Court Order Granting Sanctions [Dkt. 691]. ECF No. 743. In this sanctions order ("First Petition Sanctions Order"), the Court ordered the Debtors to pay $114,877.00 for Cerner's reasonable attorneys' fee and costs. *Id.* at 2:6-8.

With the parties' consent, the initial 30-day deadline in the Order on Motions to Compel was continued on numerous occasions to allow Debtors to gather and produce electronically stored information ("ESI") in the United Arab Emirates ("UAE"). This resulted in eight editions of the Order Modifying Order on Motions to Compel: Second Order Modifying Order on Motions to Compel entered on June 13, 2022, at ECF No. 747; Third Order Modifying Order on Motions to Compel entered on July 8, 2022, at ECF No. 769; Fourth Order Modifying Order on Motions to Compel entered August 26, 2022, at ECF No. 793; Fifth Order Modifying Order on Motions to Compel entered on November 22, 2022, at ECF No. 835; Sixth Order Modifying Order on Motions to Compel entered on December 2, 2022, at ECF No. 854; Seventh Order Modifying Order on Motions to Compel entered on February 6, 2023, at ECF No. 893; and Eighth Order Modifying Order on Motions to Compel entered on April 14, 2023, at ECF No. 937. In the Eighth Order Modifying, the Court extended the deadline for the Debtors to produce the ESI to May 1, 2023. No further orders extending the deadline were entered thereafter.

On May 10, 2023, the Debtors, through their e-discovery vendor Kroll, produced approximately 38,000 documents gathered from Belbadi in the UAE. Garfield Decl. ¶2, ECF No. 1326. At a status conference held July 11, 2023, Debtors' counsel explained that there were a "few minor issues that we're working through" and that they expected some follow-up over the next couple of weeks, but did not think "it will be all that material." Tr. of July 11, 2023 Hr'g 5:23-6:9, ECF No. 1010.

Cerner then sent the Debtors a deficiency letter dated July 31, 2023 ("Deficiency Letter"), indicating that the production appeared to be missing (1) certain attachments to emails, and (2) WhatsApp messages, including communication among Ahmed Saeed Mohammad Al Badi Al Dhaheri ("Dhaheri"), Ziad Elhindi ("Elhindi") and other key individuals. Garfield Decl., Ex. 4, ECF No. 1449-4.

The Debtors represent that following receipt of the Deficiency Letter, they continued to work with Kroll on the family-level production.[1] Debtors' Resp. 9:6-13, ECF No. 1481. Additionally, they had written and telephonic communication with Cerner's counsel regarding the review and production of WhatsApp messages. Phillip J. Haberthur ("Haberthur") Decl. 2:15-24, ECF No. 1481-1; Exs. B and C, ECF No. 1481-2.

A supplemental production of an additional 125 pages was made on August 8, 2023. According to Cerner, it did not object to the May 10 or August 8, 2023 productions as untimely in an effort to accommodate the inherent difficulties in a major production of electronic evidence. Cerner's Req. for Disc. Sanctions 5:1-3 n.2, ECF No. 1325. Additionally, Cerner represents that there was no indication at that time that the production was not substantially completed. *Id.* at 2:3-4.

On November 17, 2023, Cerner issued its Third Set of Requests for Production to the Debtors ("Third RFPs"). The Third RFPs included requests for communication between Elhindi, Nawzad Othman ("Othman"), and others, concerning Debtors' litigation with Cerner. Garfield Decl. Ex. 5, Third RFPs Nos. 4 and 9, ECF No. 1449-5.

On December 5, 2023, Cerner's counsel requested an update on the status of the WhatsApp message review, indicating they wanted to review the messages prior to the depositions of Elhindi and Othman to be held later in December 2023. Haberthur Decl. Ex. C, ECF No. 1481-2. The Debtors represent in Debtors' Response to Cerner's Supplemental

---

[1] Although not specifically defined, the parties refer to "family members" as all records associated with a particular documents (i.e. an email and the attachment). *See, e.g.,* Debtors' Memo for Hearing On: 1) Whether to Appoint Chapter 11 Trustee or Scheduled Hearing Regarding Willamette and Belbadi 2) Sanctions 3:10-12, ECF No. 1354; Garfield Decl., Ex. 4, ECF No. 1449-4.

Request for Discovery Sanctions ("Debtors' Response") that they conferred with Cerner's counsel a few days after obtaining an update from Kroll. Debtors' Resp. 9:6-13, ECF No. 1481. There is nothing in the record indicating what information was conveyed by Debtors to Cerner's counsel at that time.

Cerner represents it worked to review the materials produced from Belbadi. Cerner also proceeded with the litigation by scheduling and conducting the depositions of the Debtors' principals: Elhindi on December 18, 2023, and Othman on December 19, 2023.

On January 19, 2024, with the parties' input and concurrence, the Court entered a Notice of Evidentiary Hearing and Order Setting Deadlines scheduling a five-day evidentiary hearing on Debtor's supplemental objection to Cerner's Claim Number 1 to commence on April 29, 2024. ECF No. 1211. The non-expert and expert discovery cutoff date was March 8, 2024. On March 5, 2024, the Court entered a Stipulated Order Amending Order Setting Trial Deadlines, extending the non-expert discovery cutoff date and expert disclosures to March 13, 2024. ECF No. 1307.

On March 6, 2024, Garfield and Debtors' counsel had a telephone conversation, during which Debtors' counsel informed Garfield that further discovery production was forthcoming and that it likely would consist of the WhatsApp messages. Garfield Decl. 1:25-2:3, ECF No. 1335. Garfield was not aware that the production would contain tens of thousands of pages of documents. *Id.* at 2:6-7.

On March 8, 2024, the Debtors made a supplemental production of approximately 30,000 pages of documents. Garfield Decl. ¶5, ECF No. 1326. On March 11, 2024, Cerner filed a letter from Warren E. Gluck ("Gluck") requesting an emergency discovery conference in connection with this document production. ECF No. 1317. On March 12, 2024, the Court entered an Order Setting Status Conference for March 20, 2024. ECF No. 1323.

On or about March 13, 2024, the Debtors made another production of approximately 30,000 pages of documents. Garfield Decl. ¶7, ECF No. 1326.

On March 18, 2024, Cerner filed a Request for Discovery Sanctions (Submitted in Advance of Emergency Hearing on March 20, 2024) ("Discovery Sanctions Motion"). ECF No. 1325. At the status conference held on March 20, 2024, the Court struck the April 29, 2024 evidentiary hearing and continued the hearing on Cerner's Discovery Sanctions Motion to April 10, 2024.

Both parties filed briefs in advance of the April 10, 2024 hearing. *See* Cerner's brief at ECF No. 1351, including Garfield's declaration in support at ECF No. 1352, and Debtors' brief at ECF No. 1354. At the April 10 hearing, the Court orally ruled that it was going to impose sanctions against the Debtors and Debtors' counsel due to the belated discovery productions. The Court stated,

> So at this point what I'm going to order is that the, against both the debtor and debtors' counsel is that they pay for any and all costs and fees associated with the hearings related to this motion, any briefing on this issue, any fees and costs incurred by Cerner in relation to review of the additional documents made necessary by both the manner and extent of the belated production through today's hearing.

> What I want to see before I determine whether further sanctions are warranted is the 150 documents that have been identified and I'll give Cerner an opportunity to produce any other documents that they deem should have been produced and that are relevant earlier than that, earlier than the last productions that caused the current pending motion for sanctions.

Tr. of April 10, 2024 Hr'g 20:11-24, ECF No. 1362.

On April 17, 2024, the Court entered the Interim Order Awarding Sanctions. ECF No. 1364. In the Interim Order Awarding Sanctions, the Court awarded Cerner sanctions against Debtors and Debtors' counsel for discovery violations as alleged in Cerner's Discovery Sanctions Motion, and ordered the Debtors and Debtors' counsel

> to pay any and all of Cerner's costs and fees associated with the hearing related to the Discovery Sanctions Motion, including any briefing on this issue, and any fees and costs incurred by Cerner in relation to review of the additional documents made necessary by both the manner and extent of the belated production, through the April 10, 2024 hearing.

Interim Order Awarding Sanctions 2:10-14, ECF No. 1364. The Court further ordered that "Debtors' counsel will not be compensated by funds of the bankruptcy estate for any time

or effect expended in relation to the Discovery Sanctions Motion or further hearing on this issue." *Id.* at 2:18-20.

The Debtors were ordered to file with the Court, the approximately 150 documents identified by Debtors' counsel on the record that were not previously produced, including any items from the cell phones, WhatsApp, and email records of Othman and Elhindi by April 19, 2024. *Id.* at 2:21-24. The Court gave Cerner an opportunity to file a further response and set a status conference for May 6, 2024. *Id.*

The Debtors submitted their Amended Response to Interim Order Awarding Sanctions on April 23, 2024. ECF No. 1374. Exhibit B to the Debtors' submission—comprising cell phone and email records for Othman and Elhindi—was not filed at that time, however, due to technical issues with the court filing system caused by the large volume of the exhibit. Following a further status hearing held April 25, 2024, the Exhibit B records were provided by the Debtors to the Court in PDF format on thumb drives, as indicated in a docket text at ECF No. 1388 entered on April 29, 2024. The Exhibit B materials include two files: (1) a .pdf file titled "Exhibit B (excluding exact Lexbe duplicates)"; and (2) a .pdf file titled "Exhibit B."

Cerner timely filed a response on April 30, 2024 ("Cerner's Response"), supported by the declaration of Andrew J. Simpson ("Simpson"). ECF Nos. 1384 and 1385. Cerner also filed a Second Petition for Attorneys' Fees and Costs Award Pursuant to Court Order Granting Sanctions [ECF No. 1364] ("Second Petition") and the declaration of Garfield in support of the Second Petition. ECF Nos. 1386 and 1387. The Second Petition contains an itemization of work undertaken by Cerner's counsel in connection with the Discovery Sanctions Motion between March 8 and April 10, 2024. The fees and costs requested in the Second Petition total $139,587.75. Second Petition 9:10, ECF No. 1386.

Following the status conference held on May 6, 2024, the Court entered an Order Scheduling Additional Briefing ("Additional Briefing Order") on the Discovery Sanctions Motion. ECF No. 1424. Cerner was given until May 24, 2024, to file any briefing concerning

the legal basis for additional sanctions under Fed. R. Civ. P. 37, together with the evidence to support such additional sanctions and in support of additional costs and fees incurred through May 6, 2024. The Debtors were given until June 7, 2024, to file any briefing and evidence in response. The Additional Briefing Order further provided that the Court would contact the parties if it determined that a further hearing was necessary.

On May 24, 2024, Cerner timely filed its Supplemental Request for Discovery Sanctions Pursuant to May 7, 2024 Order ("Supplemental Request"). ECF No. 1448. Cerner seeks the following additional sanctions: (1) a further award of fees and costs incurred from April 10 to May 6, 2024, to be assessed under Fed. R. Civ. P. 37(b)(2)(C); (2) a prospective fee award under Fed. R. Civ. P. 37(b)(2)(C) of any further fees and costs that may be incurred as a result of the Debtors' discovery violations; and (3) evidentiary sanctions under Fed. R. Civ. P. 37(b)(2)(A)(ii). Garfield filed a declaration in support of the Supplemental Request. ECF No. 1449.

On May 24, 2024, Cerner also filed a Third Petition for Attorneys' Fees and Costs Award Pursuant to Court Orders Granting Sanctions ("Third Petition"), supported by the declaration of Elliot A. Magruder ("Magruder"). ECF Nos. 1450 and 1451. The Third Petition seeks fees and costs of $55,165.50, for work undertaken by Cerner's counsel in connection with the Discovery Sanctions Motion for the period between April 11 and May 6, 2024. Third Petition 5:13, ECF No. 1450.

Debtors' Response was filed on June 7, 2024, supported by Haberthur's declaration. ECF Nos. 1481 and 1481-1.

After a continued status conference on July 9, 2024, the Court scheduled oral argument on the Discovery Sanctions Motion for July 18, 2024. During the July 18, 2024 hearing, in response to the Debtors' objection regarding block billing by Cerner's counsel, the Court directed Cerner's counsel to submit for *in camera* review an itemized list of time entries that correspond to the fees requested by Cerner in its Third Petition. Tr. of July 18, 2024 Hr'g 21:1-4, ECF No. 1518. Also at the hearing, the Court recognized that based on the

Debtors' pleadings, it appeared the Debtors did not dispute Cerner's request for $89,153.40 of the total attorney fees requested through May 6, 2024. *Id.* 35:5-7. At the end of the hearing, the Court took the matter under advisement.

On July 23, 2023, Debtors' counsel filed a letter to the Court clarifying that "while the Debtors object to specific time *entries* totaling $105,599.75 (leaving $89,153.50 in 'unobjectionable entries'), the Debtors further dispute that Cerner is entitled to recover the entirety of the $89,153.50 of requested fees." ECF No. 1522. The letter further explains that while Debtors "do not dispute that Cerner is entitled to 'appropriate compensation for [its] initial motion practice' following the March 2024 productions," this should be no more than "appropriate compensation for Cerner's initial motion practice on this issue." *Id.*

On July 23, 2024, Garfield emailed the Court a cover letter and an itemized list of time entries underlying the Third Petition for *in camera* review. This itemized list includes a description of the legal services, time spent, timekeeper names, hourly rates, and total fees billed. Debtors' attorneys were copied on the cover letter but not the enclosure due to concerns about privilege and work product.

## II. DISCUSSION

Fed. R. Civ. P. 37(b)(2)(A), made applicable to this proceeding pursuant to Fed. R. Bankr. Proc. 7037[2] and 9014(c), grants the Court authority to impose sanctions for failure to obey a discovery order. Such sanctions may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. Rule Civ. P. 37(b)(2)(A)(ii). Sanctions may be imposed for even negligent failure to provide discovery. *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1343 (9th Cir. 1985) (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1427 (9th Cir. 1985)).

---

[2] Unless otherwise indicated, all chapter, section, and rule references are to the Federal Bankruptcy Code, 11 U.S.C. § 101–1532, and to the Federal Rules of Bankruptcy Procedure, 1001–9037.

Fed. R. Civ. P. 37(b)(2)(C) further provides that in instead of or in connection with a party's failure to comply with a discovery order:

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award or expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

Sanctions under Fed. R. Civ. P. 37(b)(2) are limited by two guiding principles: "'[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) (quoting *Ins. Corp. of Ireland, Ltd., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)).

**A. Monetary Sanctions Under Fed. R. Civ. P. 37(b)(2)(C).**

### *1. Attorneys' Fees and Costs Already Incurred.*

Before the Court are two separate petitions for fees already incurred: (1) the Second Petition seeking fees for work undertaken between March 8 and April 10, 2024, and (2) the Third Petition seeking fees for work performed between April 11 and May 6, 2024.

### *a. Second Petition.*

The Court has already determined that the Debtors failed to comply with the Court's Order on Motions to Compel and that Cerner is entitled to an award of fees and costs against Debtors and Debtors' counsel through the April 10, 2024 hearing pursuant to Fed. R. Civ. P. 37(b)(2)(C). *See* Interim Order Awarding Sanctions 2:7-14, ECF No. 1364. Thus, in regards to the Second Petition, the issue is not whether a fee award is justified, but whether the requested amount is reasonable.

Cerner timely filed the Second Petition on April 30, 2024, which contains an itemization of work undertaken by Cerner's counsel in connection with the Discovery Sanctions Motion between March 8 and April 10, 2024, and requests total fees and costs of $139,587.75. Second Petition 9:10, ECF No. 1386.

Both in their response and at the various hearings on this issue, the Debtors and Debtors' counsel accepted responsibility for the belated discovery and conceded that a fee award, of some amount, is warranted. *See, e.g.,* Debtors' Resp. 2:19-24, ECF No. 1481; July 23, 2024 Letter, ECF No. 1522. The Debtors argue, however, that the fee request should be limited, as the amount requested is not "reasonable or appropriate." Debtors' Resp. 14:14, ECF No. 1481. Specifically, the Debtors argue that $37,343.25 in lumped entries and $13,091[3] in deposition and trial preparation fees should be disallowed. Debtors' Resp. 18:1-7, ECF No. 1481.

The burden is on the fee applicant to document the hours reasonably expended on a matter and to "justify the reasonableness of the requested rate[s]." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The Ninth Circuit Court of Appeals ("Ninth Circuit") has adopted the "lodestar" approach for assessing an award of attorney's fees. The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). Courts in the Ninth Circuit have applied the "lodestar" method to an award of fees under Rule 37. *See, e.g.*, *Raygoza v. City of Fresno*, 297 F.R.D. 603, 608 (E.D. Cal. 2014); *Global Ampersand, LLC v. Crown Eng'g & Constr.*, 261 F.R.D. 495, 502 (E.D. Cal. 2009).

To determine a reasonable hourly rate, the Court looks to hourly rates "'prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (citation omitted). The "relevant legal community" is generally the forum in which the district court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)..

---

[3] The Debtors failed to indicate the specific entries at issue, and the Court was unable to locate time entries for "reviewing documents and preparing exhibits for deposition and trial" totaling $13,091. If the specific time entries are for tasks performed on 3/10/24 ($2,065.50), 3/11/2024 ($1,683.00), 3/14/2024 ($3,748.50) and 3/18/2024 ($5,584.50) by Magruder, the fees total $13,081.50. However, the Court identified several additional time entries by Magruder that reference trial and deposition preparation, resulting in $11,934.00 in additional fees. *See* 3/12/2024 ($4,054.50); 3/13/2024 ($5,967.00); and 3/15/2024 ($1,912.50).

The Second Petition sets forth the timekeeper and hourly rates for the work performed, ranging from $657.00 for Noah Parson to $1,080.00 for Gluck. Other than the rate charged by Gluck, these rates are substantially similar to the current rates charged by Debtors' counsel ($620.00 for Joe Field ("Field") and Haberthur). *See* Field Jerger's and Landerholm's 29th Fee Applications for Interim Compensation, ECF Nos. 1524 and 1525. Although Gluck's hourly rate is higher than the norm in this forum, this does not necessarily render his rate unreasonable. *See Gates*, 987 F.2d at 1405-06. The court in *Gates* recognized that courts in a number of other circuits have ruled that rates, other than those of the forum, may be employed for various reasons, including where a certain level of experience, expertise, or specialization may be required to handle a case properly. *See, e.g., McDonald v. Armontrout*, 860 F.2d 1456, 1459–60 (8th Cir.1988); *Polk v. New York State Dept. of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983); *Louisville Black Officers Org., Inc. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir.1983); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768–69 (7th Cir.1982), cert. denied, 461 U.S. 956 (1983).

As set forth in the Second Petition, Gluck is a partner at Holland & Knight LLP with some 15 years of legal experience and the lead attorney in this matter. His expertise and long history with this case warrant a higher hourly rate. The Court would also note that Gluck performed relatively little work on this matter during the Second Petition timeframe: 5 hours for total fees of $5,400.00. The largest amount of partner time in the Second Petition—55.10 hours—was spent by Garfield at the hourly rate of $742.50, for a total of $40,911.75. The Court finds that Cerner's counsels' hourly rates are reasonable.

The next issue in the lodestar analysis is the whether the number of hours expended by Cerner were reasonable. As stated prior, the Debtors argue that $37,343.25 in lumped entries and $13,091.00 in deposition and trial preparation fees from the Second Petition should be disallowed.

Lumping services in a single billing entry in a fee application is "universally disapproved" by bankruptcy courts. *In re Recycling Indus., Inc.*, 243 B.R. 396, 406 (Bankr.

D. Colo. 2000); *In re Telcar, Inc.*, No. 00-00762-JDP, 2007 WL 1438376, at *3 (Bankr. D. Idaho 2007) (citations omitted). Such block billing impedes a court's ability to determine the reasonableness of the hours spent on individual tasks and by itself has served as the basis for courts to disallow fees or to issue a flat reduction of a specific percentage from an award of attorney's fees. *See, e.g, In re Charis Hosp. LLC.,* 360 B.R. 190, 200 (Bankr. M.D. La. 2007). It is for this reason, that this district has a local rule requiring an itemized time record of services for which any time-based award of compensation is sought. *See* Local Rules W.D. Wash. Bankr. 2016-1(a)(6).

The Court has reviewed the time entries for services provided between March 8 and April 10, 2024, and finds they contain sufficient information for the Court to review and determine whether the time spent on the specific tasks were reasonable. Thus, the alleged block billing is not a basis to reduce the requested fees as unreasonable.

The Debtors argue that the fees sought in the Second Petition should be reduced for time spent reviewing documents and preparing exhibits for deposition and trial as these are expenses that would be incurred regardless of when the documents were produced. Fed. R. Civ. P. 37(b)(2)(C) allows recovery of "reasonable expenses, including attorney's fees, *caused by the failure*" of a party to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Reasonable expenses, therefore, only include those incurred because of a party's failure to comply with a court order. *See Shaw v. Ultimate Franchises*, No. 8:18-02273-JLS(ADSx), 2020 WL 5539963, at *3 (C.D. Cal. Aug. 25, 2020). Here, only those expenses caused by the Debtors' failure to comply with the Order on Motions to Compel are recoverable—this does not include all expenses for discovery and trial preparation that would have been expended notwithstanding the late discovery production. *See Notorious B.I.G. LLC v. Yes. Snowboards*, No. CV 19-1946-JAK (KSx), 2021 WL 6752168, at *6 (C.D. Cal. Dec. 22, 2021), *report and recommendation adopted*, No. CV 19-1946-JAK (KSx), 2022 WL 1909548, *6 (C.D. Cal. June 3, 2022).

1    The Court has reviewed all the time entries comprising the Second Petition, as is its

2    duty. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir. 1994). As previously

3    indicated, the Debtors requested that $13,091.00 in fees should be disallowed as

4    unreasonable because they relate to trial and deposition preparation that would have been

5    incurred regardless of when the documents were produced. The Court agrees that these

6    fees are unreasonable and further finds that fees for additional time entries not identified

7    by the Debtors are not warranted under Fed. R. Civ. P. 37(b)(2)(C) .

8        Taking Cerner's counsels' time entries at face value, there are seven entries totaling

9    $25,015.50 that itemize time spent for "use in trial preparation," "highlighting potential

10   trial and deposition exhibits," "reviewing . . . for use in expert reports and to prepare for

11   trial," "reviewing . . . preparing resulting trial and deposition exhibits," "preparing trial

12   and deposition exhibits," and "review . . . for use in trial and depositions." These time

13   entries occurred between March 10 and March 18, 2024, all before the Court struck the

14   April evidentiary hearing on March 20, 2024. Sanctions ordered under Fed. R. Civ. P.

15   37(b)(2)(C) must be limited to those fees and expenses "caused by the failure" of a party to

16   obey a discovery order. Furthermore, sanctions under Fed. R. Civ. P. 37(b) must be just.

17   While the Debtors admittedly did not timely comply with the Court's Order on Motions to

18   Compel, this does not mean that Cerner is entitled to any and all fees stemming from the

19   additionally-produced discovery. Indeed, given the descriptions, Cerner's counsels' time

20   entries explicitly recognize that some of the post-production fees would have been incurred

21   for deposition and trial preposition notwithstanding the late production.

22       The Court finds that the reasonable expenses and attorneys' fees that were caused by

23   the Debtors' failure to timely comply with the Court's Order on Motions to Compel are

24   limited to those expenses and fees incurred in reviewing the documents to prepare for and

25   argue these motions. These do not include fees incurred preparing for depositions and trial.

26   Accordingly, Cerner's fees requested in the Second Petition are reduced by $25,015.50, from

27   $139,587.75 to $114,572.25.

MEMORANDUM DECISION ON DISCOVERY SANCTIONS – 14

*b. Third Petition.*

For the same reason fees were awarded in the Interim Order Awarding Sanctions, the Court determines that Cerner is also entitled to a fee award against Debtors and Debtors' counsel associated with the belated production through the May 6, 2024 hearing. It is undisputed that production of the requested documents was not complete as of April 10, 2024. In the Interim Order Awarding Sanctions, the Court ordered the Debtors to file by April 19, 2024, "the approximately 150 documents identified by the Debtors' counsel on the record that were not previously produced, including any items from the cell phones, WhatsApp, and email records" of Othman and Elhindi. Interim Order Awarding Sanctions 2:21-23, ECF No. 1364. The Court further continued the status conference on the Discovery Sanctions Motions to May 6, 2024.

The Debtors filed a portion of the requested documents on April 19, 2024. However, due to technical issues and following a further status hearing requested by the Debtors, the Exhibit B records were not provided to Cerner until April 27, 2024. Cerner's Resp. 1:26, ECF No. 1384.

Subsequent to such production, which admittedly was a large volume of material, Cerner was required to expend fees to review the supplemental productions and prepare further briefing for the May 6, 2024 hearing. The Court anticipated that additional sanctions by Cerner would be sought and set a briefing schedule following the May 6 hearing for Cerner to request such additional sanctions, including costs and fees incurred through May 6, 2024. Additional Briefing Order, ECF No. 1424. As with the fees incurred through April 10, 2024, the fees and costs sought in the Third Petition are directly attributable to the Debtors' failure to comply with the Order on Motions to Compel and are authorized under Fed. R. Civ. P. 37(b)(2)(C).[4]

---

[4] The Court disagrees with the Debtors that there is no basis for awarding sanctions related to records obtained from Elhindi and Othman, including the WhatsApp messages, because they were never the subject of a motion or conferral. *See* Debtors' Resp. 12:24-26 to 13:1-7, ECF No. 1481. As the prior Examiner found in his report and the Court quoted in the Order on Motions to Compel, the line between documents belonging

As indicated above, while the Debtors and their counsel accept responsibility for the belated discovery, they contend that the requested fees are not reasonable or appropriate. The Third Petition sets forth hourly rates ranging from $657 for Noah Parson to $742.50 for Garfield. Gluck billed no time in the Third Petition. For the reasons set forth in the Court's review of the Second Petition, the Court determines that the hourly rates in the Third Petition are reasonable

The next issue in the lodestar analysis is the whether the number of hours expended by Cerner were reasonable. The Debtors argue that $55,165.50 in lumped entries from the Third Petition should be disallowed. The Court agrees that the Third Petition, as originally filed, was inadequate. However, counsel for Cerner explained at the July 18, 2024 hearing that it was prepared to submit an unredacted version of the invoice for *in camera* review. This offer was also set forth in the Third Petition. Third Petition 3:22-24, ECF No. 1450. Following the hearing, Cerner submitted to the Court for an *in camera* review an itemized list of the time entries corresponding to the fees requested in the Third Petition. Debtors' counsel has not objected to these time records being submitted for *in camera* review.

The Court has reviewed the itemized time records for services provided between April 11 and May 6, 2024, and finds that they contain sufficient information for the Court to review and determine whether the time spent on the specific tasks were reasonable. Unlike the time records for the Second Petition, these time records do not identify any work preparing for depositions or trial. Furthermore, there is nothing in the records suggesting unreasonable billing such as inflated time spent or double billing. The Court, however,

---

to the Debtors and Belbadi is "blurred, if it exists at all." Examiner's Report 13:8-10, ECF No. 614; Order on Motions to Compel 3:21-23 to 4:1-2, ECF No. 691. There is a persuasive argument that such documents were covered by the Order on Motions to Compel. Cerner clearly took this position, at least in regards to the WhatsApp messages, which were specifically addressed in the July 31, 2023 Deficiency Letter. Garfield Decl. Ex. 4, ECF No. 1449-4. Even if such documents were not covered by the Order on Motions to Compel, and thus rendering Fed. R. Civ. P. 37(b)(2)(C) inapplicable, fees are warranted under Fed. R. Civ. P. 37(c)(1)(A) for failure to supplement under Fed. R. Civ. P. 26(e). It is undisputed that these documents were responsive to Cerner's discovery request and, unlike Fed. R. Civ. P. 37(b)(2)(C), Fed. R. Civ. P. 37(c)(1) is generally "self-executing" and "automatic." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

disallows fees for 2.5 hours billed by Magruder on April 30, 2024, in the amount of $1,912.50. Based on the description provided, such fees were not caused by the Debtors' failure to timely comply with the Order on Motions to Compel. Accordingly, Cerner's fees requested in the Third Petition are reduced from $55,165.50 to $53,253.00. The Court determines that other than the $1,912.50, the remaining hours expended during the Third Petition timeframe are reasonable.

> c. *Debtors' failure to comply with the Order on Motions to Compel was not substantially justified and no circumstances make an award of expenses unjust.*

Notwithstanding the reasonableness of the fees, Fed. R. Civ. P. 37(b)(2)(C) further provides that the Court must order the payment of expenses, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." The burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make an award unjust. *In re Pleasure Point Marina, LLC*, No. CC-15-1030-FKiKu, 2015 WL 6736195, at *7 (9th Cir. BAP Nov. 3, 2015) (citing *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012)); *In re Doresca*, No. 8-16-75006-las, 2024 WL 1729625, at *7 (Bankr. E.D. N.Y. April 19, 2024).

There is nothing in the record to indicate that the failure to comply with the Court's Order on Motions to Compel was substantially justified notwithstanding the fact that the "Debtors and their counsel have repeatedly expressed, they are genuinely apologetic for the disruptive effects of those productions." Debtors' Resp. 1:19-21, ECF No. 1481. "The court is not required to find bad faith as a prerequisite to imposing monetary sanctions." *Pleasure Point Marina*, 2015 WL 6736195, at *7 (citing *Bissell v. U.S.*, 321 Fed. Appx. 549, 552 (9th Cir. 2008)). Additionally, while the Debtors argue that they have now fully complied with the Court's Order on Motions to Compel, this does not preclude the imposition of sanctions. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002)

(recognizing that last-minute tender of documents does not cure the prejudice to opponents).

The Court further finds that the Debtors and counsel have failed to demonstrate that an award of expenses is unjust. It is true that the Debtors and counsel have incurred significant fees related to the belated productions for which they will not be compensated from estate funds. Although this is likely a hardship for Debtors' counsel, the impact of the belated production on Cerner and this litigation cannot be downplayed. The direct consequence of this production was the striking of a five-day evidentiary hearing that was set to commence the following month in a case that has been pending for nearly four years, further delaying any meaningful progress in these bankruptcy cases and the litigation between Cerner and the Debtors. The Debtors and counsel's actions also necessitated several additional hearings and further briefing by Cerner, and a significant expenditure of time in reviewing the supplemental productions.

For the reasons set forth above, the Court finds that the Debtors' failure to comply with the Order on Motions to Compel was not substantially justified, and there are no circumstances that would make an award of attorney's fees and costs unjust. Thus, in accordance with Fed. R. Civ. P. 37(b)(2)(C), Cerner is awarded attorney's fees in costs in the amount of $167,825.25, to be paid by the Debtors and Debtors' counsel.[5]

### 2. Prospective Attorneys' Fees and Costs.

In its Supplemental Request, Cerner seeks a prospective fee award under Fed. R. Civ. P. 37(b)(2)(C) of any further fees and costs that may be incurred as a result of the Debtors' discovery violations. The Court reserves ruling on this request at this time. The path going forward for this bankruptcy case is still to be decided and because of developments in the bankruptcy case, it is uncertain whether the evidentiary hearing on the objection to

---

[5] In the Supplemental Request, Cerner also seeks an award of fees against Debtors' management. Suppl. Request 2:4, ECF No. 1448. This request is denied. This is the first time an award was sought against management for these discovery violations and no basis for such an award has been stated.

1  Cerner's proof of claim will be rescheduled. If the evidentiary hearing is reset, Cerner can
2  resubmit a request for any fees attributable to these discovery violations.

3  **B.  Additional Evidentiary Sanctions Under Fed. R. Civ. P. 37(b)(2)(A)(ii).**

4  Cerner also requests that evidentiary sanctions be entered against the Debtors under
5  Fed. R. Civ. P. 37(b)(2)(A)(ii), prohibiting the Debtors from: (a) relying on or introducing
6  any of the belatedly-produced materials; (b) presenting any testimonial or documentary
7  evidence based on such materials; and (c) from opposing Cerner's introducing or
8  characterizing any such materials, in any proceeding connected with this bankruptcy,
9  including but not limited to any hearing on Cerner's objection to the claim submitted in
10 this matter by Willamette Enterprises Ltd. ("Willamette") and Cerner's Motion to Execute
11 on the UAE Judgment. Supp. Request 2:11-17, ECF No. 1448.

12 The appropriateness of a discovery sanction is with the discretion of the court. The
13 Ninth Circuit has identified five factors a court should consider in determining the
14 appropriateness of discovery sanctions:  (1) the public's interest in expeditious resolution
15 of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice; (4) the public
16 policy favoring disposition of cases on their merits; and (5) the availability of less drastic
17 sanctions. *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citing *Wanderer v.*
18 *Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). Courts in the Ninth Circuit recognize that the
19 first of these two factors favor the imposition of sanctions in most cases, while the fourth
20 factor cuts against sanctions. Thus, the key factors typically are the third and fifth—
21 prejudice and availability of lesser sanctions. *Wanderer*, 910 F.2d at 656.

22 As is typical, the first two factors weigh in favor of imposing evidentiary sanctions in
23 this case. These bankruptcy cases were filed nearly four years ago and minimal progress
24 has been made toward resolution, largely because of delays caused by the Debtors' owners
25 and their shareholder. The dispute between Cerner and the Debtors, and entities related
26 to the Debtors, has a much lengthier history. The public and this Court have an interest in
27 moving these cases towards resolution. Likewise, the fourth factor, public policy in favor of

disposing of cases on their merits, weighs against sanctions. If the evidentiary hearing is rescheduled, the general preference is to resolve this issue on its merits.

As recognized by the court in *Wanderer*, the key factors therefore are prejudice and the availability of lesser sanctions. For the reasons set forth below, and primarily because lesser sanctions are available and being utilized to address any prejudice to Cerner, the Court concludes that additional evidentiary sanctions are not appropriate in this case.

It is undisputed that a substantial number of documents produced by the Debtors in March 2024, were not previously produced. According to Simpson's declaration, a total of 4,922 non-duplicate documents were produced in March 2024, which number also excludes any families of documents that were previously produced. Simpson Decl. 8.e., ECF No. 1385. Such documents also had a 96.9% hit ratio when run against the agreed upon 71 search terms. *Id.* at 9 and 9.b.

The Court has reviewed the supplemental documents in detail and agrees that they include numerous responsive items that were not previously produced. Examples include a June 19, 2017 (BELB0084746) email chain from Elhindi to Othman, to which is attached a signed "Passive Principal Certification," dated June 1, 2016 (BELB0084747). The Court disagrees with the Debtors' argument that Cerner is not prejudiced by this production because it was previously provided an unsigned copy of this document. A signed versus unsigned document is legally significant, particularly when the existence of a signed version was denied by Othman in his July 23, 2020 deposition in the state court litigation. Garfield Decl. Ex. 8, Excerpts from (Remote) Deposition of Othman, dated July 23, 2020, 99:6-13, 101:17-20, and 113:8-12, ECF No. 1449-8.

Another example is an email string between Elhindi and Haberthur dated April 17 and 20, 2020 (BELB0086645 and at BELB0086675) with a subject line of "RE: Responses to Cerner's request for documents" discussing the $100,000 "initial capital injection" and $9.9M loan that was allegedly converted from a loan from Belbadi to Vandevco, to a capital investment, and seeking clarification as to how "this was handled internally by the

companies." Cerner's Resp. Ex. A, ECF No. 1384-7. Elhindi responds that "[t]his money was taken out as a loan to Belbadi From [sic] Union National Bank. Nothing passed through Willamette, which doesn't even have a bank account." *Id.* Such emails are responsive to prior discovery requests and should have been produced.

Additional examples include an email string between Elhindi, Gopal Krishnan and Abdul Shukkoor Thekkeyil dated April 21, 2020, regarding the audited financials for Belbadi and asking whether they show an A/R from Vandevco (BELB0086644 and BELB0086645); an email from Gopal Krishnan to Elhindi dated October 18, 2020, regarding the debit balance in Belbadi's books against Vandevco at the end of December 2019 (BELB0089761); a letter dated September 12, 2012, asking Vandevco to confirm the account balance payable to Belbadi as of December 31, 2011, and signed confirmation by Vandevco to Belbadi's auditors, KPMG, of the outstanding balance payable (BELB0101021); and a letter dated May 19, 2015, confirming the account balance payable to Belbadi by Vandevco as of December 31, 2014 (BELB0104451). Cerner's Resp. Ex. A, ECF No. 1384-7 and 1384-8.

These are just a few examples of what appear to be responsive documents that were not produced prior. The Court understands that document production in this case was complex. However, the Debtors and counsel have failed to provide a satisfactory explanation as to why such a large number of responsive documents were belatedly produced. Further, Cerner did not have access to the late-filed documents prior to conducting key depositions, and was forced to expend numerous hours and resources reviewing the documents on a compressed schedule. As a direct result of the belated production, the Court also had no choice but to strike the impending evidentiary hearing. But for the availability of lesser sanctions, the prejudice to Cerner caused by the belated production could be significant.

Despite the lack of an adequate explanation and potential prejudice to Cerner, considering the remaining factor—less drastic sanctions—the Court concludes that the

imposition of additional evidentiary sanctions is not appropriate at this time. The Court understands that all requested documents have now been produced. This is not a case where a party was required to proceed to trial unprepared due to the belated production, or was denied the opportunity to conduct additional discovery after a late production. While the Court does not make light of the fact that the Debtors' conduct resulted in the Court striking the evidentiary hearing, the delay provided Cerner with the time necessary to thoroughly review the additional documents. Additionally, the Court can and will reschedule the evidentiary hearing and discovery deadlines if the case developments warrant it. Based on the record before it, the Court finds that any prejudice to Cerner caused by the belated production is at this time remedied by the lesser sanction of awarding Cerner its attorneys' fees and expenses. Any future prejudice can be remedied by allowing Cerner additional time to complete discovery, if necessary, and seek supplemental fees, if appropriate.

The Court also recognizes that the inability of Debtors' counsel to seek payment of its fees from the estate related to the belated production provides further incentive for the Debtors to comply with future discovery requests and orders. For all of these reasons, the Court concludes that additional evidentiary sanctions under Fed. R. Civ. P. 37(b)(2)(A)(ii) are not necessary or warranted.

/ / / End of Memorandum Decision / / /